OPINION OF THE COURT
Dominic J. Lodato, J.
The petitioner moves for an order pursuant to CPLR article 78 seeking an order directing the Department of Housing Preservation and Development (HPD) to make an inspection of the premises located at 115 Eastern Parkway, Brooklyn, New York, and thereafter issue a “Repair/Vacate Order” pursuant to Administrative Code of the City of New York, article 56, §§ D2656.01 and D26-56.03 (c) (1).
The petitioners are the owners of a six-story brick masonry, nonfireproof building built in 1921, consisting of 44 apartments located at 115 Eastern Parkway, Brooklyn, New York. Currently only 9 apartments are legally occupied, the remaining 35 are vacant and have been for a number of years, vandalized and in need of complete restoration.
*332 The parti.es have a history of bitter legal confrontation, whether in or out of court, having been before the Housing Court, Civil Court, Bankruptcy Court and now this court, by this article 78 proceeding.
There are numerous violations, currently in excess of 700, of the Housing Code of the City of New York on record against this property. It is claimed by the petitioner that the building is in a grave state of disrepair, with evidence of structural damage resulting from many years of neglect. HPD commenced several proceedings pursuant to RPAPL article 7-A, for appointment of a 7-A administrator, against the previous owner. The proof in those proceedings established that the tenants’ rentals were insufficient to maintain or repair the building and therefore, no feasible plan could be developed to justify the appointment of a 7-A administrator.
As recently as December 6, 1983, Judge Kramer of the Civil Court issued an order in which he stated: “the primary evidence that I have accepted does not allow that this building is capable of restoration” and “I do not credit the testimony of the tenants’ witness as to the ability to effectively repair this building in the manner which will bring it to minimum habitability levels * * * I think there is agreement of all the expert witnesses that * * * this building is not viable.”
The petitioner, on May 7, 1984, requested an inspection by HPD and a vacate order, but to date, HPD has refused on the ground it has no legal obligation to reinspect or issue a “Repair/ Vacate Order” for the premises. Therefore, the petitioner by this proceeding seeks to evoke the power of this court to direct HPD to issue a “Repair/Vacate Order” for the premises.
HPD further contends that the petitioner must limit itself to moderate repairs or moderate rehabilitation of the premises, to remove the pending violations and to provide essential services to the tenants remaining in the premises.
On the other hand, petitioner states that the building is not fit for human habitation by the conditions found now to exist in the building and that a complete and extensive rehabilitation is necessary to make the premises habitable.
The petitioner is not entitled to relief pursuant to article 78 in that petitioner has failed to exhaust the possible administrative remedies available under Code of Rent Stabilization Association of New York City, Inc. § 54 (D). This section provides for a procedure whereby the landlord can seek to recover real property and have the present tenants evicted based on the land *333 lord’s present intention to withdraw the property from the rental market.
To permit a landlord to rely upon a “RepairIVacate Order” to obtain á result whereby tenants were evicted would contravene the strong public policies of New York to preserve the number of rental housing units and to prevent the deliberate neglect by a landlord of his building with the intent of obtaining a vacate order for the purpose of converting the building into more profitable units such as cooperative apartments or condominiums. (See, Matter of Frankel v City of New York Dept. of Hous. Preservation, 108 Misc 2d 661, affd 89 AD2d 1000; Davis v Williams, 92 Misc 2d 1051, 1055; Miller v Notre Dame Hotel, NYLJ, Dec. 17, 1980, p 11, col 3.) To permit the instant petitioner, landlord, to affirmatively utilize an enforcement device imposed against him for failure to provide his tenants with minimal essential services as a basis for ejecting the tenants would certainly contravene the public policy of this State to preserve the existing rental apartments.
In light of the fact that the landlord has failed to avail itself of any such potential relief before the New York State Division of Housing and Community Renewal, petitioner has failed to exhaust all of the available administrative remedies and mandamus will not lie. (See, Suppus v Bradley, 278 App Div 337.)
That case holds that where administrative procedures are provided for the withdrawal of rental accommodations from the market, those procedures must be followed and may not be circumvented by resort to the courts.
The petitioner’s reliance on the case of People v Broadway-Sheridan Arms (275 App Div 352, affd 300 NY 559) is misplaced. In that case the court held that the landlord could not be subjected to criminal penalties because of illegal occupancy by the tenants. This is not the case here as there is no suggestion of submitting petitioner to criminal prosecution.
Likewise, petitioner’s reliance on Matter of Atco-Midwood Assoc. (NYLJ, Jan. 11, 1984, p 13, col 2) is also misplaced. In that case article 78 relief was sought due to the rescinding of a “Repair/Vacate Order” by HPD after it had previously issued same. In the case at bar HPD has never found it necessary to issue a “Repair/Vacate Order”.
Housing Maintenance Code § 56.05 (c) (Administrative Code § D26-56.05 [c]) provides for the establishment of regulations, standards and hearings to determine when a “Repair/Vacate Order” should be revoked or extended but nowhere is a hearing *334 procedure established for the issuance of a “Repair/Vacate Order”.
While petitioner has alleged substantial Buildings Department violations, petitioner has failed to allege compliance with the procedures established pursuant to Administrative Code § C26-84.0 (c) for the issuance of a vacate order by the Department of Buildings. No documentation by a professional engineer or architect is provided with regard to any specific structural problems.
Even if petitioner can establish dangerous structural problems in the building, then Administrative Code § C26-84.0 (c) provides for the issuance of a vacate order by the Department of Buildings upon such findings, not by the instant respondent.
The respondent has no obligation to inspect or to issue a vacate order at the landlord’s request. Administrative Code § D26-56.01 (b) provides in pertinent part: “The department may order or cause any dwelling or part thereof which is unfit for human habitation to be vacated.” (Emphasis added.)
Petitioner has failed to establish that the respondent acted arbitrarily and capriciously in failing to issue a vacate order at petitioner’s request.
Nothing in Housing Maintenance Code article 56 creates an obligation upon HPD to act at the request of an owner. In fact, the full intent of Housing Maintenance Code article 56 appears to be for the issuance of an order against the landlord and in certain circumstances is even punitive. The word “may” in the statute shows that HPD was given full discretion in determining whether or not to issue a vacate order. Courts will not interfere with the exercise of discretion by the executive branch of government unless: “the right to relief is ‘clear’ and the duty sought to be enjoined is performance of an act commanded to be performed by law and involving no exercise of discretion.” (Matter of Hamptons Hosp. & Med. Center v Moore, 52 NY2d 88, 96.)
“It is the settled policy of the courts not to review the exercise of discretion by public officials in the enforcement of State statutes, in the absence of a clear violation of some constitutional mandate.” (Gaynor v Rockefeller, 15 NY2d 120, 131).
Such is not the case here and the failure of HPD to inspect at the request of the owner and/or failure to issue a vacate order cannot constitute a failure to perform a duty enjoined upon it by law so as to entitle petitioner to relief pursuant to article 78.
The motion of the proposed intervenors (tenants of 115 Eastern Parkway, Brooklyn, New York) seeking an order granting *335 proposed intervenors permission to intervene in the proceedings and leave to serve and file the proposed intervenors verified answer is denied as moot inasmuch as the court has denied the petitioner’s application in all respects and dismissed the proceedings brought on by the petitioner pursuant to article 78.