■ ROGER JAZILEK, Respondent, v ABART HOLDINGS, LLC, Appellant. [899 NYS2d 198]—

Judgment, Supreme Court, New York County (Judith J. Gische, J.), entered December 11, 2009, awarding plaintiff principal damages of $12,377.85, treble damages of $31,205.31, and legal fees of $30,545.86, unanimously affirmed, with costs. Appeal from amended order (same court and Justice), entered October 28, 2009, which granted plaintiff's motion and denied defendant's cross motion for summary judgment, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

Defendant owns the apartment building at 50 East Third Street in Manhattan. From about 1981 through March 2002, defendant leased apartment 1B to a prior tenant, under a rent-stabilized lease. The stabilized tenant then agreed to vacate the premises and surrender all of her rights. The apartment's registered legal rent on file with the State Division of Housing and Community Renewal at that time was $812.34 per month.

After the tenant of record vacated the premises, the landlord commenced a holdover proceeding in housing court against plaintiff herein, on the grounds that he was an illegal subtenant. On April 2, 2002, the parties executed a so-ordered settlement stipulation whereby the landlord offered plaintiff a two-year lease in his own name, at a monthly rent of $2,200, with a "preferential rent" of $1,800 per month during the two-year term.

On April 2, 2002, in accordance with the stipulation, the parties executed a two-year lease with a rider reciting that the apartment's "legal regulated rent" was $2,200 and providing for a "lower preferential rent" of $1,800 during the term of the lease. In March 2004, the parties executed a renewal lease with a similar rider reciting a "legal regulated rent" of $2,299 per month and a preferential rent of $1,881.

In July 2005, plaintiff commenced this action seeking a declaration that the stipulation was "void as against public policy" because it violated the Rent Stabilization Law (RSL) and Rent Stabilization Code (RSC), and that he was the apartment's "lawful rent-stabilized tenant," and also a declaration as to the apartment's maximum legal rent. Plaintiff also sought damages and treble damages for any rent overcharges, as well as attorneys' fees. On a prior appeal, the Court of Appeals held that the "stipulation violates the Rent Stabilization Code and is void as against public policy" (10 NY3d 943, 944 [2008]).

We reject defendant's contention that since the Court of Appeals held the stipulation to be void, the parties should be restored to the status quo ante the stipulation, thus permitting

defendant to pursue its claims against plaintiff as a holdover from an illegal sublet. Review of the parties' lease reveals it was a freestanding agreement, not specifically tied to the stipulation. Rather than incorporating or otherwise referring to the stipulation, the lease instead contains a merger clause expressly reciting that "[a]ll promises made by the Landlord are in this lease. There are no others." Additionally, the stipulation did not in any way compel defendant to renew plaintiff's lease, which the landlord did in 2004. Hence, even assuming that the initial lease was, contrary to its own terms, inextricably bound to the voided stipulation, the renewal lease was completely independent of the stipulation.

Moreover, the holding of the Court of Appeals specifically voided only the stipulation, not the parties' lease agreement. The lease expressly provided that if any of its terms were found to be "illegal, the rest of this lease remains in full force." Hence, although the lease provision setting the rent at $2,200 and deregulating the apartment is violative of the RSL and thus void, the balance of the lease, and with it the parties' landlord-tenant relationship, is unaffected (see Rent Stabilization Code [RSC] [9 NYCRR] § 2520.12 ["(t)he provisions of any lease . . . shall remain in force pursuant to the terms thereof, except insofar as those provisions are inconsistent with . . . the RSL or this Code, and in such event such provisions shall be void and unenforceable"]).

In calculating the amount of the rent overcharges, the motion court correctly declined to apply any periodic or other rent increases, other than a vacancy increase of 20% (see RSC § 2522.8 [a] [1]), which the parties agreed applied. A landlord's failure to file a "proper and timely" annual rent registration statement results in the rent being frozen at the level of the "legal regulated rent in effect on the date of the last preceding registration statement" (Rent Stabilization Law [Administrative Code of City of NY] § 26-517 [e]; see RSC § 2528.4 [a]). The rent registration filed by the landlord in February 2004 was false, as it continued to list the prior tenant as tenant of record, and listed the prior rent of $812.34, instead of the actual paid "preferential" rent of $1,800. The rent registration filed in June 2004 was also defective, as it listed a legal rent of $2,200, vastly in excess of $974.81, the highest possible legal rent at that time. As such, both the February and the June 2004 rent registration statements were nullities (Thornton v Baron, 5 NY3d 175 [2005]), and no further registration statements were filed.

The court also correctly held treble damages to be applicable.

In support of its argument that the overcharge was not willful, defendant relies on the so-ordered stipulation containing the agreed-upon rental figure of $2,200. Although that document recites that the rent for the apartment shall be set at $2,200 per month, there is no representation that this number constitutes the apartment's legal regulated rent. In any event, a representation in a stipulation—even a so-ordered stipulation—"is not to be equated with a judicial finding" (*Urban Assoc. v Hettinger*, 177 AD2d 439, 439 [1991], *lv denied* 79 NY2d 759 [1992]). Hence, it cannot be presumed that in so-ordering the stipulation, the housing court was making any finding that the stated monthly rent was the legal regulated rent. Concur—Andrias, J.P., Sweeny, Renwick, Abdus-Salaam and Manzanet-Daniels, JJ.